IN THE UNITED STATES DISTRICT COURT. FILED

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION   2005 MAY 26  P 4: 19

| | |
|---|---|
| GERARDO FLORES RAMOS SR., | § |
| MARY-ANN BUSH FINUCANE and | § |
| PATRICIA LENZY | § |
| | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| CITY OF SAN ANTONIO; | § |
| BEXAR COUNTY; SAN ANTONIO | § |
| MAYOR ED GARZA; SAN ANTONIO | § |
| CITY CLERK LETICIA M. VACEK; | § |
| SAN ANTONIO CITY ELECTIONS | § |
| COORDINATOR MELINDA S. LOPEZ; | § |
| BEXAR COUNTY JUDGE NELSON W. | § |
| WOLFF; and BEXAR COUNTY ELECTION | § |
| ADMINISTRATOR CLIFFORD | § |
| BOROFSKY, in their official capacities, | § |
| | § |
| Defendants. | § |

SA05CA0500  XR

CIVIL ACTION NO.

## ORIGINAL COMPLAINT

1.    This action seeks to enjoin Defendants from conducting the June 7, 2005 municipal runoff election

for Mayor and Council in violation of the Voting Rights Act of 1965, the Americans with

Disabilities Act and the Texas Election Code. City Defendants have changed the voting system

for the upcoming municipal runoff election from touch screen Direct Recording Electronic (DRE)

machines to paper optical scan ballots in violation of state and federal law and failed to secure

preclearance for their voting change pursuant to Section 5 of the Voting Rights Act of 1965. The

uncleared change from touch screen voting machines to paper optical scan ballots for the

municipal runoff election is therefore without legal force or effect. Defendants have also failed to provide an early voting polling place in the predominantly-minority Dellcrest area of San Antonio's East Side in violation of Section 2 of the Voting Rights Act of 1965.

2.  Pursuant to Section 5 of the Voting Rights Act of 1965 and the Americans with Disabilities Act, Plaintiffs seek a temporary restraining order from the Court preventing the use of optical scan ballots instead of touch screen DRE voting machines in the June 7, 2005 municipal runoff election.

## REQUEST FOR THREE-JUDGE PANEL

3.  Plaintiffs request that their Section 5 enforcement claims be heard and determined by a court of three judges in accordance with 42 U.S.C. §1973c and the provisions of 28 U.S.C. §2284.

## JURISDICTION

4.  Jurisdiction is based upon 28 U.S.C. 1343a(3) & (4) and upon 28 U.S.C. 1331 for causes of action arising from 42 U.S.C. 1973c and 42 U.S.C. 12132. Jurisdiction for Plaintiffs' claim for declaratory relief is based upon 28 U.S.C. 2201 and 2202. Supplemental jurisdiction for Plaintiffs' state law claim is based on 28 U.S.C. 1367. Jurisdiction for Plaintiffs' claim for attorneys fees is based on 42 U.S.C. Sections 1973l(e) and 1988. Venue is proper in this court under 28 U.S.C. 1391(b).

## PARTIES

5.  Plaintiff Gerardo Flores Ramos, Sr. is a BEXAR COUNTY registered voter and resident of the CITY OF SAN ANTONIO. He lives at 158 Dokes Dr., San Antonio, TX 78228. Mr. Ramos has not yet voted in the June 7, 2005 municipal runoff election. Mr. Ramos is Latino and is blind.

6.    Plaintiff Mary-Ann Bush Finucane is a BEXAR COUNTY registered voter and resident of the CITY OF SAN ANTONIO.  She lives at 4926 Benham Dr., San Antonio, TX 78220. Ms. Finucane has not yet voted in the June 7, 2005 municipal runoff election. Ms. Finucane is Anglo and is a resident of the Dellcrest neighborhood.

7.    Plaintiff Patricia Lenzy is a BEXAR COUNTY registered voter and resident of the CITY OF SAN ANTONIO.  She lives at 6007 Whispering Lake St., San Antonio, TX 78222.  Ms. Lenzy has not yet voted in the June 7, 2005 municipal runoff election. Ms. Lenzy is African American and is a resident of the Lakeside neighborhood of San Antonio.

8.    Defendant CITY OF SAN ANTONIO is a municipality organized and existing under the laws of the State of Texas.

9.    Defendant BEXAR COUNTY is a county organized and existing under the laws of the State of Texas.

10.    Defendant ED GARZA is Mayor of the CITY OF SAN ANTONIO. He is the presiding officer of the San Antonio City Council, the governing body of the CITY OF SAN ANTONIO. He is responsible generally for the conduct of municipal elections in San Antonio, including conducting the June 7 municipal runoff election.

11.    Defendant LETICIA M. VACEK is the SAN ANTONIO CITY CLERK.  Her official responsibilities include the planning and conduct of municipal elections as well as maintaining official records of the CITY OF SAN ANTONIO and preparing for and conducting City Council meetings and public hearings.

12.    Defendant  MELINDA  S.  LOPEZ  is  the  SAN  ANTONIO  CITY  ELECTIONS

3

COORDINATOR. Under the supervision of the SAN ANTONIO CITY CLERK, Defendant Lopez plans and conducts municipal elections for the CITY OF SAN ANTONIO.

13.     Defendant NELSON W. WOLFF is Bexar County Judge.   He is a voting member and the presiding officer of the Bexar County Commissioner's Court, the governing body of BEXAR COUNTY.  He is responsible generally for the conduct of elections in BEXAR COUNTY and is responsible generally for administering, under contract with the CITY OF SAN ANTONIO, the June 7, 2005 municipal runoff election.

14.     Defendant CLIFFORD BOROFSKY is Bexar County Elections Administrator. He is responsible for the activities of the Bexar County Elections Department, including voter registration activities and election operations in BEXAR COUNTY. He is also responsible for administering, under contract with the CITY OF SAN ANTONIO, the June 7, 2005 municipal runoff election.

15.     Defendant CITY OF SAN ANTONIO has retained Defendant BEXAR COUNTY to administer the upcoming June 7, 2005 municipal runoff election for Mayor and Council on behalf of the city.

16.     All Defendants are sued in their official capacities.

17.     At all times relevant hereto, Defendants were and have been acting under color of the statutes, ordinances, regulations, customs and usages of the State of Texas, BEXAR COUNTY, Texas and the CITY OF SAN ANTONIO.

## STATEMENT OF FACTS AND LAW

The June 7, 2005 municipal runoff election for Mayor and Council

18.     On May 7, 2005, the CITY OF SAN ANTONIO held its general municipal election for Mayor and Council.  In that election, which was administered for the City by the Bexar County Elections

4

Department, the City used "iVotronic" touch screen Direct Recording Electronic (DRE) voting machines. The touch screen DRE voting machine is accessible to visually impaired voters because it is equipped with a headphone to insure privacy when voting as well as navigation buttons with Braille instructions. Touch screen DRE voting machines also provide all voters the ability to reduce "over-voting" and "under-voting" and take the individual voter through the ballot in a step-by-step process of candidate selection with the opportunity to review the voter's choices before casting the ballot.

19.     Defendant BEXAR COUNTY abandoned paper optical scan ballots and acquired touch screen DRE voting machines in 2002. Since then BEXAR COUNTY has spent substantial funds and staff time conducting outreach and voter education to raise awareness of the adoption of touch screen DRE machines and to teach voters how to use the machines.

20.     Because three races in the May 7, 2005 general municipal election did not yield a candidate with a majority of the votes cast, the CITY OF SAN ANTONIO scheduled its June 7, 2005 municipal runoff election. That election will feature contested races for Mayor, Council member for District 6 and Council member for District 7.

21.     On or about May 10, 2005, the Bexar County Elections Department, which will adminster the upcoming June 7 municipal runoff election on behalf of the CITY OF SAN ANTONIO, notified the Bexar County Commissioners' Court that the City had decided to use optical scan paper ballots for voting and vote tabulation in the upcoming June 7 municipal runoff election. This announcement was the first public notice that the City would switch from touch screen DRE machines to paper optical scan ballots.

22.     Early voting for the municipal runoff election will begin Tuesday, May 31, 2005 and end Friday,

June 3, 2005.

23.     On or about May 23, 2005, a mere five working days before the commencement of early voting

for the June 7, 2005 municipal runoff election, the CITY OF SAN ANTONIO submitted a

preclearance application requesting approval for the change from touch screen DRE machines to

paper optical scan ballots to the Voting Section of the U.S. Department of Justice in Washington

D.C. The Department of Justice has not yet ruled on the preclearance application and has until July

21, 2005 (60 days from the date of submission) to render its decision. 28 C.F.R. § 51.9.

24.     Upon information and belief, the proposed change from touch screen to paper optical scan ballots

for the upcoming June 7 municipal runoff election has not received the necessary preclearance

under Section 5 of the Voting Rights Act.

25.     Because paper optical scan ballots require the voter to read and mark his or her candidate

selection on paper, these ballots are not accessible to visually-impaired voters. The proposed

change from touch screen to paper optical scan ballots for the upcoming June 7 municipal runoff

election will remove the ability of visually-impaired voters to cast a secret ballot.

26.     Because paper optical scan ballots have not been used in Bexar County since 2002, and because

they increase the likelihood that voters will "under-vote" or "over-vote" their ballots, the proposed

change from touch-screen to paper optical scan ballots for the upcoming June 7 municipal runoff

election will have a disparate negative impact on new voters and minority voters.

27.     In addition, the CITY OF SAN ANTONIO has chosen to not include, among its early voting

polling places, the Dellcrest Plaza Shopping Center, or any other location in the Dellcrest area of

6

San Antonio's East Side, despite the fact that BEXAR COUNTY customarily uses this early voting

polling place. Dellcrest Plaza Shopping Center is located at S. W.W. White and Rigsby Avenue.

28.     The Dellcrest area of San Antonio, including the neighborhoods of Dellcrest, Dellcrest Forest,

Lakeside, Jupe, Comanchee Park and Huntley Park, is a predominantly-minority area located on

San Antonio's East Side. The failure of the CITY OF SAN ANTONIO to locate an early voting

polling place in the Dellcrest area will force the predominantly-minority voters of this area to travel

substantial distances to cast an early vote and will have a disparate negative impact on minority

voters.

29.     The CITY OF SAN ANTONIO is a political subdivision of the State of Texas and is organized

pursuant to the laws of the State of Texas. The CITY OF SAN ANTONIO is subject to the

requirements of the Voting Rights Act, the Americans with Disabilities Act and the Texas Election

Code.

The Voting Rights Act of 1965

30.     The Voting Rights Act contains two sections relevant to this case: Section 2 and Section 5.

Section 2 applies to all political jurisdictions in the United States and prohibits any state or political

subdivision from imposing a "voting qualification or prerequisite to voting or standard, practice or

procedure…in a manner which results in the denial or abridgement of the right to vote on account

of race or color." 42 U.S.C. Section 1973(a) (1996).

31.     Section 5 of the Voting Rights Act applies only to certain jurisdictions that have historically

excluded minority groups from voting. A jurisdiction covered by Section 5 must "preclear" any

changes in its electoral laws, including changes in election systems and methods of voting, with the

7

U.S. Department of Justice or the U.S. District Court for the District of Columbia. 42 U.S.C. § 1973c (1996) and 28 C.F.R. § 51.13.

32.    The preclearance requirement of Section 5 applies to Texas and all of its political subdivisions and states that "all qualifications, prerequisites, standards practices, or procedures with respect to voting different from those in effect on November 1, 1972 must be determined, either by the United States District Court for the District of Columbia or the United States Attorney General, not to have the purpose or effect of denying or abridging the right to vote on account of race, color or membership in a language minority group." 42 U.S.C. § 1973.

33.    The CITY OF SAN ANTONIO is subject to the requirements of Section 5 of the Voting Rights Act.

34.    Sections 2 and 5 of the Voting Rights Act are separate and independent provisions. For example, a change that has been precleared under Section 5 may still be challenged under Section 2.[1]

35.    In 1982, Congress amended Section 2 of the Voting Rights Act to reaffirm "the right of minority voters to be free from election practices, procedures or methods, that deny them the same opportunity to participate in the political process as other citizens enjoy." S. Rep. No. 97-417, 97th Cong., 2d Sess. 28 (1982) ("S. Rep."), *reprinted in* 1982 U.S.C.C.A.N. 206.

36.    To reach discriminatory conduct that might otherwise evade liability under the more stringent intent standard, the amendment created a "results" test. *Id.* at 40; H.R. Rep. No. 227, 97th Cong., 1st

---

[1]Section 5 of the Voting Rights Act provides: "Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure." 42 U.S.C. § 1973c (1996).

Sess. 3 (1981).

37.     Pursuant to Section 2 of the Voting Rights Act of 1965, the CITY OF SAN ANTONIO is

        prohibited from employing election procedures or standards that have the effect of denying minority

        voters the right to participate in the political process on the basis of race or national origin.

The Americans with Disabilities Act

38.     Title II of the Americans with Disabilities Act (ADA) covers all activities of State and local

        governments regardless of the government entity's size or receipt of Federal funding. Title II

        requires that state and local governments give people with disabilities an equal opportunity to

        benefit from all of their programs, services, and activities (e.g. public education, employment,

        transportation, recreation, health care, social services, courts, voting, and town meetings). *See*

        42 U.S.C. § 12132.

39.     In enacting the ADA, Congress found that discrimination against persons with disabilities, in

        essential aspects of public and private life, was current, serious and pervasive. Congress found this

        to be true specifically with regard to voting and so stated in the ADA. 42 U.S.C.A. § 12101

        (a)(3).

40.     The ADA lists, among its stated purposes, a clear and comprehensive national goal to eliminate

        discrimination against individuals with disabilities. To achieve this goal, the ADA establishes

        strong, consistent and enforceable standards designed to redress discrimination in public and

        private life against individuals with disabilities.

41.     The ADA provides in relevant part: "no qualified individual with a disability shall, by reason of such

        disability, be excluded from participation in or be denied the benefits of the services, programs, or

9

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §

12132.

42.     Title II of the ADA addresses discrimination practiced by public entities. Defendants are public

entities, as that term is defined in 42 U.S.C. § 12131 (1). Plaintiff Ramos is a qualified person with

a disability or disabilities, as defined in 42 U.S.C. § 12131 (2).

43.     To further ensure comprehensive and uniform application of the ADA, the Act supersedes federal,

state or local laws which conflict with the Act, but does not supersede federal, state or laws which

provide equal or greater protections to individuals with disabilities than the ADA provides.

44.     Title II's prohibitions against discrimination are specifically delineated in the regulations promulgated

in 28 C.F.R. part 35 *et seq*.  In relevant part, they provide that:

   (a)     A public entity, in providing any aid, benefit, or service, may not, directly or indirectly or
through contractual, licensing or other arrangements, on the basis of disability ... deny a qualified
individual with a disability the opportunity to participate in or benefit from the aid, benefit, or
service. 28 C.F.R. § 35.130 (b)(1)(ii);

   (b)     A public entity, in providing any aid, benefit, or service, may not, directly or indirectly or
through contractual, licensing, or other arrangements, on the basis of disability ... afford a qualified
individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service
that is not equal to that afforded others. *Id.* § 35.130 (b)(1)(ii);

   (c)     A public entity, in providing any aid, benefit, or service, may not, directly or indirectly, or
through contractual, licensing, or other arrangements, on the basis of disability ... provide a qualified
individual with a disability with any aid, benefit, or service that is not as effective in affording equal
opportunity to obtain the same result, to gain the same benefit, or to reach the same level of
achievement as that provided to others.  *Id.* § 35.130 (b)(1)(iii);

   (d)     A public entity may not, directly or through contractual or other arrangements, utilize
criteria or methods of administration ... that have the effect of subjecting qualified individuals with
disabilities to discrimination on the basis of disability.  *Id.* § 35.130(d).

Texas Election Code

45.     Texas Election Code § 122.0011 was enacted by the Legislature to ensure access to voting by

persons with disabilities. It provides in relevant part: "A voting system that is acquired on or after

September 1, 1999, must: (1) comply with Section 504 of the federal Rehabilitation Act of 1973

(29 U.S.C. Section 794) and its subsequent amendments and Title II of the federal Americans with

Disabilities Act (42 U.S.C. Section 12131 et seq.) and its subsequent amendments; and (2)

provide a practical and effective means for voters with physical disabilities to cast a secret ballot."

46.     The decision of the CITY OF SAN ANTONIO to abandon touch screen DRE machines, which

it used for the May 7, 2005 municipal election, and adopt instead a voting system that uses paper

optical scan ballots, removes the ability of visually-impaired voters to cast a secret ballot because

they must rely on another person to read them the ballot and mark their choice.

47.     The right to cast a secret ballot is fundamental in Texas. The removal from visually-impaired voters

of an election system that allows them to cast a secret ballot, and the replacement of that system

with paper optical scan ballots violates the fundamental right of visually-impaired voters to cast a

secret ballot.

Request for Injunctive Relief

48.     If Defendants are not enjoined from conducting the June 7, 2005 municipal runoff election with an

unprecleared and illegal change from touch screen DRE machines to paper optical scan ballots,

Plaintiffs will be irreparably harmed by the denial of the protection afforded to them through the

process of review and approval (or denial) of preclearance requests by the U.S. Justice

Department. Furthermore, Plaintiffs will suffer immediate and irreparable harm to their voting rights

11

if they are forced by Defendants to cast their votes on paper optical scan ballots which they have not used for three years, are substantially different from touch screen DRE machines, present greater risk of voter error such as "over-voting" or "under-voting" and do not allow visually-impaired voters to cast a secret ballot.

49.    The immediate and irreparable harm to Plaintiffs' voting rights that will result if Defendants are not enjoined from conducting the June 7, 2005 municipal runoff election with paper optical scan ballots will be permanent because, after the municipal runoff election is held, there is little chance the election results will be changed.

## FIRST CAUSE OF ACTION
## SECTION 5 OF THE VOTING RIGHTS ACT OF 1965

50.    Plaintiffs' first cause of action arises under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.  Since Defendants have failed to secure federal preclearance for their change to paper optical scan ballots, this election change is legally unenforceable.  Any elections conducted using the unprecleared change in election system are void and violate the rights of Plaintiffs as secured by Section 5 of the Voting Rights Act.  Unless enjoined, Defendants will proceed with the June 7, 2005 municipal runoff election in violation of the Voting Rights Act of 1965, as amended.

## SECOND CAUSE OF ACTION
## SECTION 2 OF THE VOTING RIGHTS ACT OF 1965

51.    Defendants' failure to provide an early voting polling place in the Dellcrest area of San Antonio results in a denial or abridgement of the right to vote of Plaintiffs and other residents of the East Side on account of their race, color, or ethnicity, by requiring residents of the East Side to travel

12

substantial distances to cast their ballot and by discouraging East Side residents from early voting. The failure to provide an early voting polling place in the Dellcrest area of San Antonio denies Plaintiffs and other East Side Residents an equal opportunity to participate in the political process and to elect representatives of their choice, and denies Plaintiffs and other East Side Residents the right to vote in elections without distinction of race, color or previous condition of servitude in violation of 42 U.S.C. Sections 1971(a) and 1973.

## THIRD CAUSE OF ACTION
## AMERICANS WITH DISABILITIES ACT

52. Plaintiffs' third cause of action arises under the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* Defendants' change from touch screen DRE machines, which are accessible to visually-impaired voters, to paper optical scan ballots, which are not accessible to visually-impaired voters violates Title II of the ADA in that this change removes the ability of visually-impaired voters to cast a secret ballot and denies Plaintiff Ramos and those similarly-situated an equal opportunity to access voting procedures and participate in the political process.

## FOURTH CAUSE OF ACTION
## TEXAS ELECTION CODE

53. Plaintiffs' fourth cause of action arises under Texas Election Code § 122.0011. Defendants' change from touch screen DRE machines, which are accessible to visually-impaired voters, to paper optical scan ballots, which are not accessible to visually-impaired voters violates Texas Election Code § 122.0011 because it constitutes the adoption of a voting system after September 1, 1999, does not comply with Title II of the Americans with Disabilities Act and does not provide a practical and effective means for voters with physical disabilities to cast a secret ballot.

13

## REQUEST FOR DECLARATORY RELIEF

54.     Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2201, Plaintiffs seek a declaration that Defendants' plan to conduct the June 7, 2005 municipal runoff election with the unprecleared use of paper optical scan ballots violates the rights of Plaintiffs as secured by the Voting Rights Act of 1965, the Americans with Disabilities Act and the Texas Election Code and that any election conducted pursuant to the unprecleared election system change violates the rights of Plaintiffs as secured by the Voting Rights Act of 1965, the Americans with Disabilities Act and the Texas Election Code.

## BASIS FOR EQUITABLE RELIEF

55.     Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from Defendants' unlawful practices. Plaintiffs will continue to suffer irreparable injury from Defendants' acts, policies, and practices set forth herein unless Defendants are enjoined by this Court.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court enter Judgment granting Plaintiffs:

A.      A declaratory judgment that Defendants' actions violate the rights of Plaintiffs as secured by Section 2 and Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* and Texas Election Code §122.0011;

B.      Preliminary injunctive relief enjoining Defendants, their successors in office, agents, employees, attorneys and those persons acting in concert with them or at their direction from conducting

14

the June 7, 2005 municipal runoff election with paper optical scan ballots and permanent injunctive relief

enjoining Defendants, their successors in office, agents, employees, attorneys and those persons acting in

concert with them or at their direction from conducting subsequent municipal elections with paper optical

scan ballots and without an early voting polling place in the Dellcrest area of San Antonio.

      C.      The costs of this suit, including reasonable attorneys fees;

      D.      An order of this Court retaining jurisdiction over this matter until all the Defendants have

complied with all the orders and mandates of the Court; and

      E.      Such other and further relief as the Court may deem just and proper.

DATED:  May 26, 2005            Respectfully submitted,

                                *Nina Perales*

Nina Perales
State Bar No. 24005046
David Hinojosa
State Bar No. 24010689
Marisol Perez
State Bar No. 24029768
David Urias
Mexican American Legal Defense and
   Educational Fund
140 E. Houston St., Suite 300
San Antonio, TX 78205
(210) 224-5476
(210) 224-5382 - Fax

James C. Harrington
State Bar No. 09048500
Sheri Joy Nasya Tolliver
State Bar No. 24028050
Texas Civil Rights Project
Michael Tigar Human Rights Center

15

1405 Montopolis Drive
Austin, Texas 78741-3438
(512) 474-5073
(512) 474-0726 - Fax

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was sent by fax and Certified Mail, Return Receipt Requested on this 26th day of May, 2005 to:

Susan Reed
Bexar County District Attorney
300 Dolorosa, #5072
San Antonio, TX 78205-3030
Fax 210-335-2884

Andrew Martin
City of San Antonio Attorney
3rd Floor, City Hall
100 So. Flores St.
PO Box 839966
San Antonio, TX  78283
Fax 210-207-4004

NINA PERALES

16